IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

JACK WHEELER,
       PLAINTIFF,

                               CIVIL ACTION NO.

V.

CALCASIEU PARISH, LOUISIANA;
GARRETT PUCKETT; AND
DONALD SHILLOW;
       DEFENDANTS


<u>PLAINTIFF, JACK WHEELER'S, ORIGINAL COMPLAINT</u>

This suit is brought by Plaintiff, Jack Wheeler, who brings this action against Calcasieu Parish; Garrett Puckett, a Corporal with the Calcasieu Parish Sheriff's Department; and Donald Shillow, an officer with the Calcasieu Parish Sheriff's Department. Plaintiff contends that, on September 10, 2019, his civil rights were violated, and he was severely injured. Plaintiff would show unto the Court as follows:.

I.     – <u>JURISDICTION AND VENUE</u>

1.    Jurisdiction is invoked under 28 U.S.C. section 1331 (federal question) and under 42 U.S.C. section 1983.

2.  Plaintiff asserts violation of his constitutional rights under the Fourth Amendment to the United States Constitution (excessive force and seizure) as cognizable under the law.

3.  Plaintiff asserts violation of his constitutional rights under the Eight Amendment to the United States Constitution (excessive bail).

4.  Plaintiff asserts violation of his constitutional due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.

5.  The underlying events occurred in the city of Lake Charles, Calcasieu Parish, Louisiana, which lies within the jurisdiction of this Court.

II.    – <u>PARTIES</u>

6.  Jack Wheeler is a resident of, and domiciled in, the State of Louisiana.

7.  Garrett Puckett was employed by the Calcasieu Parish Sheriff's Department at all times material to this cause of action, and holds the rank of Senior Corporal with the Calcasieu Parish Sheriff's Department.

8.  Donald Shillow was employed by the Calcasieu Parish Sheriff's Department at all times material to this cause of action, and holds the rank of Sergeant with the Calcasieu Parish Sheriff's Department.

9.  Calcasieu Parish is located in the State of Louisiana.

III.    – <u>UNDERLYING FACTS SUPPORTING CLAIMS</u>

10.  On the evening of September 10, 2019, Jack Wheeler was at a friend's property in Lake Charles, Louisiana.

11.  Jack Wheeler was behind a pond located on the property when he saw the beams of multiple flashlights; he initially thought that someone may be playing a prank on him.

12.  As Jack Wheeler came around the pond, he saw several vehicles from the Calcasieu Parish Sheriff's Office, parked in front of the house with lights flashing.

13.  Jack Wheeler immediately called the Calcasieu Parish Sheriff's Office; when he reached dispatch, he stated "this is Jack Wheeler.  Are y'all in Homewood [the neighborhood in which both he and the officers on the scene were located] looking for me?"

14.  When the dispatcher answered in the affirmative, Jack Wheeler stated "please tell whoever is looking for me that I am here on the property; I am coming to meet them; I am not going to be any trouble; and I don't have any weapons."

15.  The dispatcher patched Jack Wheeler through to the commanding officer at the scene; when that officer came on the line, Jack Wheeler stated "this is

Jack Wheeler; I'm on the property; I'm coming to meet y'all; I am not going to be any trouble; and I don't have any weapons."

16. Jack Wheeler had barely finished making the statement when the call abruptly terminated, as though the officer had hung up the phone.

17. Jack Wheeler immediately called the direct line for the desk sergeant at the Calcasieu Parish Sheriff's Office.

18. When the desk sergeant answered the phone, Jack Wheeler stated "I was just talking to someone in Homewood [the neighborhood in which he and the officers on the scene were located] and I got disconnected; please patch me through to him again."

19. The desk sergeant patched Mr. Wheeler's call through to the commanding officer on the scene again.

20. When the commanding officer on the scene was on the line, Jack Wheeler again stated "this is Jack Wheeler; I am here on the property; I am coming to meet y'all; I am not going to be any trouble; and I do not have any weapons."

21. The officer stated "okay. Two officers will be coming around the house to meet you. Just follow their commands."

22. Jack Wheeler responded in the affirmative, indicating that he would follow the officers' commands.

23. Corporal Garrett Puckett and Sergeant Donald Shillow then came around the corner of the house; Puckett was leading a canine on a leash.

24. Puckett and Shillow began shouting at Jack Wheeler "get down on the ground!  Get down on the ground!"

25. Jack Wheeler immediately began to get on the ground, shouting "I don't have any weapons!"

26. Jack Wheeler lay still on the ground, with his hands out and his palms open, expecting the officers to come cuff him and take him into custody.

27. Sergeant Donald Shillow ran up, and knelt on Jack Wheeler's shoulder/back.

28. Jack Wheeler turned his head to look at Shillow to ask why Shillow was sitting on him.

29. Shillow said "don't look at me, motherfucker!" and began punching Jack Wheeler in the temple.

30. Jack Wheeler then experienced an immediate excruciating pain, as though a chainsaw were biting into his leg.

31. Puckett had set the dog on Jack Wheeler, while Jack Wheeler was lying face down, unarmed, unresisting, and being punched in the head by Shillow.

32. Jack Wheeler screamed in pain.

33. Puckett called the dog back to his side.

34. A few seconds later, Puckett gave the dog another verbal command, and the dog again attacked Jack Wheeler.

35. Jack Wheeler could hear the dog gnawing through his leg.

36. Shillow continued to punch Jack Wheeler.

37. Shillow was wearing gloves while punching Jack Wheeler, and attempting to shove something into Jack Wheeler's mouth.

38. When Puckett finally pulled the dog off of Jack Wheeler, Puckett and Shillow finally placed handcuffs on Jack Wheeler.

39. The Calcasieu Parish Sheriff's Department arrested Jack Wheeler that evening on misdemeanor charges.

40. The underlying warrant was for misdemeanor charges (violation of a protective order).

41. An ambulance had arrived at the scene.

42. Shillow and Puckett and/or other officers of the Calcasieu Parish Sheriff's Office, refused to allow the ambulance driver to take Jack Wheeler to the hospital in an ambulance.

43. The ambulance driver argued with the officers that the injury was possibly life-threatening, and Jack Wheeler should be transported by ambulance.

44. Shillow and Puckett, and/or other officers of the Calcasieu Parish Sheriff's Office, continued to refuse.

45. When Jack Wheeler arrived at Lake Charles Memorial Hospital, he had forty-seven (47) holes in his leg; a large swath of skin had been ripped away; and the underlying nerves and muscles had been shredded.

46. Immediate treatment of the injury involved flushing the wound with a saline solution, vacuuming up the solution as the wound was cleansed.

47. Some of Jack Wheeler's nerves were sucked into the vacuum during this cleaning process.

48. Jack Wheeler was not sedated or under any pain medication at the time this procedure was conducted.

49. Despite the unimaginable pain, Jack Wheeler continued to notice an acrid taste in his mouth.

50. Jack Wheeler repeatedly asked for something to wash his mouth out.

51. The trauma surgeon was not present at the hospital on the night of September 10, 2019.

52. Jack Wheeler was taken to jail after the gaping wound in his leg was cleaned.

53. The following day, September 11, 2019, Jack Wheeler was taken back to Lake Charles Memorial Hospital for surgery.

54. The wound, covering most of Jack Wheeler's leg below the knee, required a skin graft to close.

55. A large patch of skin was removed from Jack Wheeler's thigh, in order to graft the wound closed.

56. Jack Wheeler was transported back to the Calcasieu Parish Jail after surgery.

57. Jack Wheeler's bond, for the misdemeanor charges serving as the basis for his arrest, was set at $250,000.00.

58. Jack Wheeler remained in jail until March 25, 2020.

59. After a bond reduction hearing some months after Jack Wheeler's September 10, 2019 arrest, the presiding judge released Jack Wheeler from the bond obligation.

60. The Sheriff's Office refused to release Jack Wheeler from custody, setting another bond.

61. Once a subsequent bond was set, the Sheriff's Office refused to allow Jack Wheeler's friends or family members to post bond for him.

62. Jack Wheeler remained in jail for over six months, having been arrested on misdemeanor charges, held on a $250.000.00 bond, and subsequently denied the opportunity to post bond.

63. Jack Wheeler was only released from custody after onset of the global pandemic.

64. Each time Jack Wheeler was scheduled for a court appearance, the prosecutor's office would offer him the opportunity to be released from custody, if he would agree to plead guilty to certain charges.

65. Jack Wheeler vehemently maintains his innocence, and refused to enter a guilty plea.

66. Accordingly, Jack Wheeler was deprived of the opportunity to post bond and remained in custody.

67. Over a month after the dog tore Jack Wheeler's leg virtually in half, and after the initial skin graft, Jack Wheeler's muscles and tendons remained visible through the wound; Jack Wheeler's pulse was visible in the wound.

68. Jack Wheeler did not receive any physical therapy while he was in jail,

69. A year after the arrest, Jack Wheeler is able to walk, with a limp.

70. As of the date of filing this petition, Jack Wheeler's wound still contains staples and stitches.

71. As of the date of filing this petition, Jack Wheeler does not have any feeling in his leg below the knee.

72. Jack Wheeler was a licensed and bonded construction contractor in the State of Louisiana, for many years prior to his arrest.

73. Jack Wheeler was thirty-nine years of age on September 10, 2019.

74. Jack Wheeler did not have a criminal history at the time of his arrest.

75. As of the date of filing this petition, Jack Wheeler has not been released by his treating physician to go back to work as a contractor.

76. Jack Wheeler's contracting work required him to operate machinery and engage in other activities that require some degree of physical agility, such as climbing up on roofs or walking beams.

77. As of the date of filing this petition, by virtue of the injuries sustained during his arrest on September 10, 2019, Jack Wheeler is unable to go back to work as a contractor.

78. None of the video and/or audio recordings related to these events, including, but not limited to, the recordings of Jack Wheeler's multiple telephone calls to the Calcasieu Parish Sheriff's Office, or the footage from either Puckett's or Shillow's body cameras, has been made available to undersigned counsel at the time of the preparation and filing of the instant complaint.

IV.   FOURTH AMENDMENT CLAIM

79. Plaintiff suffered an injury, which resulted directly and only from the use of force; the degree of force exerted was clearly excessive; and the excessiveness of the force was clearly unreasonable.

80. The injury was caused by the acts of Defendant Puckett and Defendant Shillow.

81. Defendant Puckett and Defendant Shillow were present to arrest Jack Wheeler on misdemeanor charges.

82. Defendant Puckett and Defendant Shillow knew that Jack Wheeler was unarmed.

83. Defendant Puckett and Defendant Shillow knew that Jack Wheeler intended to surrender.

84. Defendant Puckett and Defendant Shillow observed Jack Wheeler comply with their commands to get down on the ground.

85. At no time did Jack Wheeler move or gesture toward Defendant Puckett or Defendant Shillow in a threatening manner.

86. At no time did Jack Wheeler refuse or fail to comply with any verbal commands given by Defendant Puckett or Defendant Shillow.

87. At no time did Jack Wheeler take any action to resist arrest by Defendant Puckett or Defendant Shillow.

88. Neither Defendant Puckett nor Defendant Shillow could reasonably have believed that it was necessary to set the dog on Jack Wheeler.

89. Neither Defendant Puckett nor Defendant Shillow could reasonably have believed that it was necessary to set the dog on Jack Wheeler a second time.

90. The Fourth Amendment of the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and

effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

91. The excessive use of force by a law-enforcement officer on an individual "in the context of an arrest or investigatory stop" constitutes an "unreasonable seizure" of the individual, in violation of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, L. Ed. 2d 443 (1989).

92. At the time that Shillow sat on Jack Wheeler and began punching him in the temple, the circumstances did not indicate that any force was necessary: Jack Wheeler had surrendered; was following verbal commands; and was unarmed.

93. At the time that Puckett deployed the dog to attack Jack Wheeler, the circumstances did not indicate that any force was necessary to arrest Jack Wheeler: Jack Wheeler had surrendered; was following verbal commands; and was not armed.

94. The second time that Puckett deployed the dog to attack Jack Wheeler, no circumstances indicated that any force was necessary.

95. Jack Wheeler had called the Calcasieu Parish Sheriff's office three times, speaking to an officer on the scene two times, in order to make clear that he was unarmed and was surrendering peacefully.

96. There is no standard by which Puckett and Shillow's violent conduct may be gauged as reasonable, in light of those facts and circumstances.

V.    EIGHTH AMENDMENT/DUE PROCESS CLAIMS

97. The Eighth Amendment to the United States Constitution prohibits the setting of excessive bail, when holding individuals in custody prior to trial.

98. The Fifth and Fourteenth Amendments to the United States Constitution prevent deprivation of any person's right to liberty without due process of law.

99. An individual's right to due process prevents the government from taking action which "shocks the conscience" or which otherwise infringes on individual rights which are "implicit in the concept of ordered liberty." *United States versus Salerno*, 481 U.S. 739, 746, *citing Rochin v. California*, 342 U.S. 165, 172 (1952); *Palko v. Connecticut*, 302 U.S. 319, 325-326 (1937); *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

100. Defendant Calcasieu Parish held Jack Wheeler on a two hundred and fifty thousand dollar ($250,000.00) bond for misdemeanor charges.

101. When the court released Jack Wheeler from that bond obligation, Defendant Calcasieu Parish refused to release Jack Wheeler from custody.

102. Defendant Calcasieu Parish then doubled down, instating bond on different charges.

103. Defendant Calcasieu Parish refused to allow Jack Wheeler's friends and family members to post bond for him, illegally holding Jack Wheeler in jail for over six months.

104. Jack Wheeler would likely still be in custody, had the COVID-19 global pandemic not forced Calcasieu Parish to whittle its jail population.

VI.   – COURSE AND SCOPE, COLOR OF LAW

105. At all times materials to this cause of action, Defendant Puckett was employed by the Calcasieu Parish Sheriff's Office.

106. At all times materials to this action, Defendant Puckett was working under the color of law.

107. On September 10, 2019, Defendant Puckett used excessive force against Jack Wheeler, causing grievous injury.

108. At all times material to this action, Defendant Shillow was employed by the Calcasieu Parish Sheriff's Office.

109. At all times material to this action, Defendant Shillow was working under the color of law.

110. On September 10, 2019, Defendant Shillow used excessive force against Jack Wheeler, causing injury.

VII.  – POLICY, CUSTOM, PRACTICE – 42 U.S.C. SECTION 1983

111. Defendant Calcasieu Parish is a Parish, as that term is defined and understood under Louisiana law.

112. The injury to Jack Wheeler, sustained on September 10, 2020, was the byproduct of Calcasieu Parish's policy, custom, and practice in protecting its officers in general and the use of excessive force in particular.

113. Calcasieu Parish (Calcasieu Parish Sheriff's Office) is liable for failure to supervise its officers, in such a way that the Fourth Amendment rights of citizens were at risk.

114. The Calcasieu Parish Sheriff's Office has permitted its officers to utilize excessive force, and particularly to utilize excessive force by deployment of canines, for so long or so frequently that the course of conduct warrants an attribution to the City and/or the Parish, that utilization of excessive force is the expected, accepted practice of employees of the Sheriff's Office.

115. Officers of the Calcasieu Parish Sheriff's Office treat injury of citizens by deployment of canines as sport.

116. For example, officers with the Calcasieu Parish Sheriff's Office are known to set their canines on citizens; take pictures of any particularly gruesome

injuries; and then proudly display them to friends, much as one might display hunting trophies.

117. In early 2020, a young man named Michael Walden was viciously attacked by a canine, pursuant to a command by a Calcasieu Parish Sheriff's Officer.

118. The dog tore into Walden's neck, almost killing him.

119. Around the same time, a man named Allen Woodard was mauled by a canine, deployed to attack him by a Calcasieu Parish Sheriff's officer.

120. The dog mauled Woodard from head to toe, resulting in multiple severe injuries.

121. Officers who use excessive force are commended and promoted; for example, Defendant Puckett has risen through the ranks of the Calcasieu Parish Sheriff's Office, which has bestowed upon him the title of "Senior Corporal."

122. Defendant Calcasieu Parish has failed to properly and adequately train its officers regarding excessive force generally and deployment of canines in particular.

123. Defendant Calcasieu Parish has failed to properly and adequately supervise its officers in the context of excessive force generally and deployment of canines in particular.

124. Defendant Calcasieu Parish works to keep individuals incarcerated, in violation of their constitutional right to due process and against excessive bail, forcing guilty pleas.

123. These policies, practices and customs are the moving force for the violation of Plaintiff's and others' known constitutional rights.

124. Defendant Calcasieu Parish is jointly and severally liable for its violation of Jack Wheeler's constitutional rights against the use of excessive force and illegal searches and seizures, pursuant to the Fourth Amendment of the United States Constitution and 42 United States Code section 1983; his rights to due process of law, pursuant to the Fifth and Fourteenth Amendments to the United States Constitution and 42 United States Code section 1983; and his right against excessive bail, pursuant to the Eight Amendment to the United States Constitution and 42 United States Code section 1983.

VIII.  – <u>CLAIMS FOR DAMAGES</u>

125. Plaintiff sues for the following:

   1.    Pain and suffering, compensatory damages;

   2.    Punitive damages;

   4.    Reasonable and necessary attorneys' fees;

   5.    Prejudgment and post-judgment interest;

6.    Costs of court.

IX.    – Prayer and Conclusion/Jury Trial is Demanded

126. Plaintiff prays Defendant be cited to appear herein and after citation and

discovery, that Plaintiff be afforded a trial by jury;

127. Plaintiff prays for all legal and equitable relief to which they may be entitled,

under law or in equity.

Date: September 10, 2020.

Ellyn J. Clevenger (#32395)
Wendy E. Manard (#29622)
1100 Poydras Street
Suite 2601
New Orleans, Louisiana 70163
504.585.7777
ellynclevenger@gmail.com
wendy@wmanard.com

ATTORNEYS FOR PLAINTIFF